1
2
3
4
5
6
7
8
9
10
11

**E-Filed: 03.31.10**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

12

CHANH MINH DANG,                     )   CASE NO. CV 03-08985 MMM
                                     )
13              Petitioner,          )
                                     )   ORDER ADOPTING IN PART AND
14     vs.                           )   REVISING IN PART REPORT AND
                                     )   RECOMMENDATION OF UNITED
15   G J GIURBINO, Warden,           )   STATES MAGISTRATE JUDGE
                                     )
16              Respondent.          )
                                     )
17 _____)

18         On January 25, 2008, Magistrate Judge Jeffrey W. Johnson issued a Report and

19   Recommendation, recommending that Chanh Minh Dang's petition for writ of habeas corpus be

20   denied and dismissed with prejudice.  The court adopts Section IV of the report, which finds that

21   petitioner's first claim that his former attorney's testimony against him violated the attorney-client

22   privilege does not state a claim cognizable on habeas review.  The court also adopts Sections V

23   and VI of the report, which find that the state court was not objectively unreasonable in denying

24   petitioner's claims for violation of his right to be free from unnecessary physical restraint, and

25   from cruel and unusual punishment.

26         For the reasons stated herein, the court declines to adopt Section VII of the report, in

27   which Judge Johnson found that all of petitioner's ineffective assistance of counsel claims except

28   the first had been procedurally defaulted.  The court addresses this issue below.

1    **A.    Procedural Default**

2         Petitioner's fourth claim for relief alleges that he received ineffective assistance of counsel

3    at various points during the state court proceeding.   Respondent argues that all but the first of

4    petitioner's ineffective assistance claims are procedurally defaulted because they were previously

5    denied as untimely by the California Supreme Court.   Petitioner counters that California's

6    timeliness rule applied has not been "consistently and regularly applied."[1]   The Report and

7    Recommendation concluded that petitioner had not met his burden in challenging the state rule,

8    and that his claims asserting ineffective assistance of trial counsel, save one, were procedurally

9    defaulted as a result.[2]   It further found that two of petitioner's ineffective assistance of appellate

10   counsel claims were procedurally defaulted for the same reason.

11        Before denial of a claim on state procedural grounds will bar federal review, the rule on

12   which the state court relied must constitute an "adequate and independent state ground" for

13   denying petitioner's claims.   *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).   In *Bennett v.*

14   *Mueller*, 322 F.3d 573 (9th Cir. 2003), the Ninth Circuit held that California's timeliness rule was

15   an "independent" state ground because it was "not interwoven with federal law."  *Id.* at 581-82.

16   It could not determine, however, whether the timeliness rule was "adequate" in the sense that it

17   was consistently applied.  *Id.* at 583.   To provide guidance to the district court on remand, the

18   Ninth Circuit held that the burden of proof on adequacy rests with the state because procedural

19   default is an affirmative defense, *id.* at 585-86, and laid out a burden-shifting procedure to be used

20   in litigating the issue.   First, respondent must plead the existence of an adequate and independent

21   state procedural ground as a defense; once he does, petitioner must "place the defense in issue."

22   *Id.* at 586.   Generally, the court stated, petitioner's burden in this regard can be satisfied "by

23   asserting specific factual allegations that demonstrate the inadequacy of the state procedure,

24   _____

25       [1]Petitioner's Traverse at 21.

26       [2]Petitioner raised the claim that Judge Johnson addressed on the merits in his first petition
     for review in the California Supreme Court, filed July 2003.  Petitioner raised the balance of his
27   ineffective assistance claims – those Judge Johnson found procedurally defaulted – in his second
     petition for review filed in the California Supreme Court in September 2003.
28

including citation to authority demonstrating inconsistent application of the rule." *Id.* If petitioner satisfies this burden, the court held, "the ultimate burden [of proving that the state procedural bar is adequate and independent] is the state's." *Id.*

In *King v. Lamarque*, 464 F.3d 963 (9th Cir. 2006), the Ninth Circuit clarified its holding in *Bennett*. The *King* court held that in cases where a state procedural rule has previously been found to be inadequate, a petitioner "may fulfill [his] burden under *Bennett* by simply challenging the adequacy of the procedure." *Id.* at 967. In such instances, "the burden then shifts back to the government to demonstrate that the law has subsequently become adequate." *Id.* Such a rule is necessary, the court stated, "to maintain the primary principle we announced in *Bennett*: the government bears the ultimate burden of establishing the adequacy of a rule." *Id.*

The state procedural rule at issue in *King* was the same timeliness rule at issue here. the *King* court noted that the rule had previously been found to be inadequate in capital cases, citing *Morales v. Calderon*, 85 F.3d 1387 (9th Cir. 1996). *King*, 464 F.3d at 967. Because petitioner had challenged the adequacy of a state procedural rule previously found to be inadequate, the court stated that on remand "the government must demonstrate that California's 'substantial delay' rule has become sufficiently clear and consistently applied to justify barring federal review of [the petitioner's] claim." *Id.* at 968.

In this case, petitioner has sufficiently challenged California's timeliness rule, a rule that the Ninth Circuit has previously found to be inadequate. He argues that "the State's procedural bar is not consistently and regularly applied,"[3] and alleges that the state courts improperly denied his petition because he adequately justified his delay.[4] This suffices to satisfy petitioner's burden under *King*. See *King*, 464 F.3d at 967 (petitioner who claimed that "the California Supreme Court's dismissal of his case demonstrates that it inconsistently applies the timeliness rule because he properly justified his delay" met his burden); *Dossman v. Newland*, 216 Fed. Appx. 698, 698 (9th Cir. Jan. 8, 2007) (Unpub. Disp.) (petitioner who claimed the timeliness rule was not "clear,

---

[3]*Id.*

[4]*Id.*

consistently applied, and well-established at the time of [his] purported default" met his burden under *King*); *Hernandez v. Woodford*, No. C 06-3975 WHA (PR), 2008 WL 1809082, *3 (N.D. Cal. Apr. 22, 2008) (petitioner satisfied his burden by contending that his claims were not procedurally defaulted).

The burden thus shifted to respondent to "present[ ] state authority showing that the timeliness rule was clear and certain, well-established, and consistently applied in non-capital cases as of 200[3]." *Townsend v. Knowles*, 562 F.3d 1200, 1207 (9th Cir. 2009). Because respondent did not do so, she did not meet her burden of proving the affirmative defense, and the court thus turns to the merits of the ineffective assistance claims that Judge Johnson found to be procedurally defaulted.[5]

### B.    Ineffective Assistance of Trial Counsel

Claims of ineffective assistance of counsel are evaluated under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Because the test is conjunctive, the court may address either deficient performance or prejudice first. *Id.* at 697 ("[A] court need not determine whether counsel's performance was deficient

---

[5]Judge Johnson found that petitioner's first ineffective assistance claim – which alleges that his trial attorney was ineffective for failing to investigate and present the testimony of witnesses – was not procedurally defaulted. Judge Johnson considered that claim on the merits in Section VII of his Report and Recommendation. As noted, in Part B.1 below, the court adopts that portion of Section VII.

before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed").

### 1.    Petitioner's Claim 4(a/b):[6]

Petitioner claims his trial counsel was ineffective because he failed to investigate and produce certain witnesses.  Section VII of Judge Johnson's Report and Recommendation addresses the merits of this claim, and the court adopts this portion of Section VII.

### 2.    Petitioner's Claim 4(c):[7]

Petitioner's Claim 4(c) alleges that the attorney he retained to file and argue a new trial motion, Duane Folke, provided ineffective assistance because he failed properly to investigate and support the new trial motion with affidavits of newly discovered witnesses and failed to argue that trial counsel was ineffective because he failed to investigate and produce key defense witnesses. Folke filed a written motion for new trial and also a motion for discovery.  The new trial motion stated that it was based on the discovery of three witnesses who allegedly would have offered testimony that was inconsistent with that introduced at trial.   The motion did not identify the witnesses.  Folke submitted a declaration stating that he had hired an investigator and required additional time to obtain documents and subpoena witnesses.  Shortly after the new trial and discovery motions were filed, however, Folke moved to withdraw on the basis that petitioner was not paying his fees and expenses, including expenses associated with subpoenaing the witnesses. The trial court granted Folke's motion, and ultimately granted petitioner's request that he be permitted to represent himself in connection with the new trial motion.  Petitioner moved for the appointment of an investigator; the trial court also granted this motion.

---

[6]This claim is identified on page 7 of the petition as "Ground Four (1)."  Respondent refers to the claim as claim 4(a).   On page 8 of his traverse (section IV.B.), petitioner adopts respondent's terminology, identifying the claim as "claim 4(a)."

[7]This claim is identified on pages 7-7a of the petition as "Ground Four (2)."  Respondent addresses the claim at pages 51-55 of the answer, and petitioner addresses in section IV.C of his traverse at page 10.  Neither the answer nor the traverse identify the claim by number.  For ease of reference, the court denominates the claim by the next number in order – 4(c).

1    At the hearing on the new trial motion, several witnesses that petitioner had subpoenaed

2    were present.  These included the district attorney who had prosecuted the case, petitioner's trial

3    counsel, one of the victims, Ms. Nguyen, and Mr. and Ms. Sarangabany.  Petitioner did not have

4    declarations signed by the Sarangabanys, as required by California Penal Code § 1181.  See CAL.

5    PEN. CODE § 1181(8) ("When a motion for a new trial is made upon the ground of newly

6    discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits

7    of the witnesses by whom such evidence is expected to be given, and if time is required by the

8    defendant to procure such affidavits, the court may postpone the hearing of the motion for such

9    length of time as, under all circumstances of the case, may seem reasonable").  After a portion

10   of the hearing had been held, the trial court continued the balance of the hearing for two weeks

11   so that petitioner could obtain the necessary declarations.  Petitioner subpoenaed witnesses,

12   including Ms. Sarangabany, for the second hearing, but did not obtain declarations from them.

13   Because Ms. Sarangabany had been known at the time of trial (and had in fact testified), the trial

14   court asked for an offer of proof concerning the "new evidence" she would provide.  Petitioner

15   was unable to provide one.  The trial court thus excused Ms. Sarangabany without taking her

16   testimony.  Petitioner attempted to make an offer of proof regarding the pizza delivery man,

17   Muoi; once again, however, he had no declaration and Muoi was not present at the hearing.  Like

18   Ms. Sarangabany, Muoi was known at the time of trial; the trial court commented that petitioner

19   had not explained why Muoi's testimony could not have been produced at trial and therefore

20   excluded evidence related to him.

21   Petitioner contends that Folke was ineffective because he failed to support the motion for

22   new trial with affidavits or declarations.  As respondent notes, Penal Code § 1181 does not

23   require that declarations be filed simultaneously with a motion for new trial.  Rather, it states that

24   declarations must be produced at the time of the hearing on the motion.  Thus, counsel's failure

25   to file declarations at the time he filed the motion was not ineffective, as he was following the

26   letter of the statute and sought, and was granted, additional time to obtain the affidavits that were

27   required.

28   By the time of the hearing, of course, petitioner, at his request, was representing himself.

The trial court had given him funds to hire an investigator; petitioner nonetheless did not obtain declarations from the witnesses who purportedly could offer newly discovered evidence. Indeed, even after the trial court continued the proceeding to give him an opportunity to do so, petitioner did not obtain declarations. Petitioner asserts that Folke was more interested in collecting his fee than in diligently representing petitioner's interests.[8] Petitioner does not challenge the trial court's decision to grant Folke's motion to withdraw, however, or its decision permitting him to proceed *pro se* as grounds for habeas relief. Consequently, those matters are not properly before the court. As for Folke's performance, prior to the time he withdrew, as noted, Folke followed the dictates of Penal Code § 1181. His performance, therefore, was not deficient.

Even were this not the case, petitioner cannot demonstrate prejudice. Although his federal habeas petition did not identify the witnesses from whom he claimed Folke should have obtained declarations supporting the new trial motion, petitioner's traverse (and his state habeas petition) identified Ms. Sarangabany and Muoi as the individuals at issue. Both witnesses were known at the time of trial, and petitioner nowhere states what "new" evidence they would have presented. Furthermore, Judge Johnson correctly found, in ruling on Claim 4(a/b), that there was no reasonable probability that Ms. Sarangabany's or Muoi's testimony would have changed the outcome of the trial. Consequently, petitioner cannot show prejudice as a result of any alleged deficient performance by Folke.

Petitioner also asserts that Folke was ineffective because he failed to raise ineffective assistance of trial counsel as a ground for the new trial motion. Elsewhere in his traverse,[9]

---

[8]Petitioner cites *Harris v. Housewright*, 697 F.2d 202, 206 (8th Cir. 1982), overruled on other grounds in *Girtman v. Lockhart*, 942 F.2d 468, 475 (8th Cir. 1991), in support of this contention. *Harris* is inapposite. There, appointed counsel sought and received a payment from defendant's family although his fees were being paid by the court. The court held that "defense counsel's conduct in requesting private payment was improper," but that it did not "independently establish ineffective assistance of counsel." Rather, the court stated, "[t]he payment . . . call[ed] into question whether counsel were diligent and devoted advocates of the petitioner's case, or whether they were primarily interested in collecting a fee." *Id.* at 206.

[9]Petitioner's Traverse, Section V.A at 22.

7

petitioner argues that the trial court erroneously believed it could not consider ineffective assistance of trial counsel as a basis for granting a new trial.  Petitioner thus seems to contend that had Folke cited relevant case law, the trial court would have understood that it could consider his ineffective assistance of trial counsel argument.  Petitioner is correct that a trial court has discretion to determine whether a new trial motion is an appropriate vehicle through which to raise a claim that trial counsel provided ineffective assistance of counsel.  See *People v. Cornwell*, 37 Cal.4th 50, 99-101 (2005), disapproved of on other grounds in *People v. Doolin*, 45 Cal.4th 390 (2009).  The *Cornwell* Court stated:

> "Our cases explain that, in appropriate circumstances, the trial court should consider a claim of ineffective assistance of counsel in a motion for new trial, because 'justice is expedited when the issue of counsel's effectiveness can be resolved promptly at the trial level.' . . .  But our assumption has been that courts would decide such claims in the context of a motion for new trial when the court's own observation of the trial would supply a basis for the court to act expeditiously on the motion.  As we stated in *People v. Fosselman*, . . . 33 Cal.3d 572, . . . : 'It is undeniable that trial judges are particularly well suited to observe courtroom performance and to rule on the adequacy of counsel in criminal cases tried before them. . . .  Thus, in appropriate circumstances justice will be expedited by avoiding appellate review, or habeas corpus proceedings, in favor of presenting the issue of counsel's effectiveness to the trial court as the basis of a motion for new trial.  If the court is able to determine the effectiveness issue on such motion, it should do so.' . . ." *Id.* at 101.

As respondent notes, it is unclear whether the trial court would have concluded that it would expedite proceedings to decide petitioner's ineffective assistance of trial counsel claim in the context of the new trial motion.  This is particularly true since the claim concerned performance that took place outside the courtroom and the court thus could not rely on what it had observed during the course of trial.  The court need not determine whether the trial court would have entertained the argument, however.  Petitioner's traverse asserts that Folke should have argued

1   that trial counsel's failure to investigate and call Ms. Sarangabany and Muoi as witnesses

2   constituted ineffective assistance of counsel.  For the reasons stated in Judge Johnson's Report and

3   Recommendation, such a claim would not have succeeded.  Consequently, petitioner cannot show

4   prejudice.

5           **3.       Petitioner's Claim 4(c/d):**[10]

6           Petitioner asserts, in Claim 4(c/d),  that trial counsel was ineffective because he failed to

7   investigate and adduce evidence that victim Nguyen's physical injuries did not show that he beat

8   her and burned her arm with a cigarette.  In his traverse, petitioner clarifies that the evidence to

9   which he refers is a set of photographs taken three days after the incident, photographs Ms.

10  Nguyen gave Officer Quijada of the San Gabriel Police Department.  Petitioner contends the

11  photographs should have been introduced, Officer Quijada should have been called as a witness,

12  and the photographs should have been used to cross-examine another witness, Thuy Bui, who

13  testified that petitioner hit[11] Ms. Nguyen and burned her.

14          Petitioner has not adduced the photographs in question, but a police report describing them

15  is in the record.[12]  According to the report, photographs of Ms. Nguyen's arms, legs and face

16  were taken on September 3, 1998, two days after the incident in question, by "V-4, Bui."  The

17  photographs showed no distinguishing marks or injuries on Ms. Nguyen's legs, arms, and face.[13]

18  _____

19          [10]Petitioner refers to this claim as both claim 4(c) (see Petitioner's Traverse at 14) and

20  claim 4(d) (*id.*).   In the petition, it is identified as "Ground Four (3)" on page 7a.

21          [11]Contrary to petitioner's assertion, Bui testified that she never saw petitioner hit Nguyen

    with his pistol.  (Reporter's Transcript at 313:11–13.)

22

23          [12]Motion to Dismiss, Exh. G at G-163–64.

24          [13]Motion to Dismiss, Exh. G at G-163–64.  The incident occurred on September 1, 1998.

25  (Reporter's Transcript page 187; Motion to Dismiss, Exh. G at G-158; Magistrate Judge's Report
    and Recommendation at 5).  It is not entirely clear when the photographs in question were taken,

26  but it appears they were taken on September 3, 1998, two days after the incident.  (See *id.* at G-
    164).  The report describes investigative activities on September 3; although it states that Nguyen

27  "later" agreed to have polaroid photographs of her arms, legs and face taken "later," this appears
    to refer to a later point during the interview that took place on September 3 rather than a

28  subsequent day.  It is clear the photographs were taken prior to September 8, because that is the

As petitioner notes, the police report states that Ms. Nguyen said "if he hit me, wouldn't I have marks on me?" before the photographs were taken.

To establish prejudice under *Strickland*, petitioner bears the burden of showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Judicial review of an attorney's performance is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). Here, assuming without deciding that trial counsel erred in failing to introduce the photographs and the injuries they depicted, the mistake was not sufficiently serious that there is a reasonable probability producing the evidence could have changed the outcome of the trial.

As respects the cigarette burn, several witnesses testified that they saw petitioner burn Ms. Nguyen with a cigarette.[14] Indeed, although he characterized it as an accident, petitioner himself testified that he burned Nguyen with a cigarette.[15] Given this testimony, it is highly unlikely that the photographs (or the report mentioning them) would have convinced the jury that Nguyen was not burned. Moreover, whether or not petitioner burned Nguyen with a cigarette was a collateral issue, having little to do with the crimes petitioner was charged with committing.

As relevant here, petitioner was charged with, and convicted of, false imprisonment by violence, and one count of assault with a deadly weapon against Nguyen.[16] The jury was instructed that "[a] deadly weapon is any object, instrument or weapon which is used in such a manner as to be capable of producing . . . great bodily injury. Great bodily injury refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury

---

date of the next entry in the report. Petitioner's traverse alleges the photographs were taken three days after the incident.

[14]Reporter's Transcript at 195–96, 245–46, 312-13.

[15]Petitioner testified that he "grabbed the cigarette" from Nguyen, while it was still burning, and a spark from the cigarette burned her. (*Id.* at 391–92.)

[16]Motion to Dismiss, Exh. A.

or moderate harm."[17]   Following this instruction, the jury could not have concluded that the cigarette was a deadly weapon.  Indeed, the prosecutor's closing argument on the assault with a deadly weapon charge focused on evidence that petitioner pointed a pistol and threatened to shoot.[18]   See *People v. Ausbie*, 123 Cal.App.4th 855, 863 n. 5 (2004) (noting, in a case where defendant was charged with mayhem for burning another with a cigarette, that he had not been charged with assault with a deadly weapon and that mayhem does not require use of a deadly weapon), disapproved on other grounds in *People v. Reed*, 38 Cal.4th 1224, 1228 (2006); *People v. Flores*, No. F034114, 2002 WL 66151, *9 (Jan. 17, 2002) (Unpub. Disp.) (noting that there are many ways to commit mayhem without using a deadly weapon and citing *People v. Keenan*, 227 Cal.App.3d 26, 28-29 (1991), for the proposition that scars left by cigarette burns can constitute mayhem).[19]

The primary evidence supporting the false imprisonment charge was that petitioner left the Huynhs' house, got a pistol from his car, reentered the house, forced his way into the room where Nguyen was hiding, pointed the pistol at her neck and dragged her away with him.[20]   The incident involving the cigarette burn occurred before petitioner left the house to get the pistol.[21]   At the time petitioner burned Nguyen with the cigarette, he was not trying to force her to leave with him. So, whether or not the jury concluded that petitioner burned Nguyen with a cigarette would have had little, if any, effect on their determination of guilt on the false imprisonment charge.

---

[17]Reporter's Transcript at 473.

[18]*Id.* at 487–89.

[19]"Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority."  *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

[20]See Reporter's Transcript at 200–08.

[21]See *id.* at 196.

As for petitioner's contention that the photographs could have been used to prove that he did not beat Nguyen, witnesses reported that the beating Nguyen sustained was to her head.[22]  The photographs mentioned in the report purportedly depict Nguyen's legs, arms and face.  The report does not state that they depict the back, sides or top of Nguyen's head.  Consequently, the photographs would not have revealed injuries (or lack of injuries) to Nguyen's head.  Even if the photographs could have shown conclusively that Nguyen was not beaten, moreover, whether petitioner beat Nguyen during the incident was a collateral issue.  As noted, the charges against petitioner that involved Nguyen were false imprisonment and assault with a deadly weapon.  Although bludgeoning with a pistol could support a charge of assault with a deadly weapon, see *People v. White*, 115 Cal.App.2d 828, 832 (1953), the prosecutor's closing argument regarding this charge relied solely on the fact that petitioner pointed a pistol at Nguyen and threatened to shoot her.[23]  The prosecutor did not mention any beating of Nguyen.  Consequently, the failure to adduce evidence associated with a theory of guilt not presented to the jury does not constitute ineffective assistance of counsel.  Cf. *Dunn v. United States*, 442 U.S. 100, 106-07 (1979) ("To uphold a conviction on a charge that was . . . no[t] presented to a jury at trial offends the most basic notions of due process. . . .  The jury might well have reached the same verdict had the prosecution built its case on petitioner's October 21 testimony adopting his September 30 statement rather than on the September statement itself.  But the offense was not so defined, and appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial").  Similarly, the primary evidence supporting the false imprisonment charge was testimony that petitioner put a loaded pistol to Nguyen's neck and dragged her out of the house.  Addressing the false imprisonment charge during closing argument, the prosecutor attorney emphasized the dragging, mentioned the pistol, and said nothing as to whether petitioner had beaten Nguyen during the incident.[24]

---

[22]Reporter's Transcript at 252.

[23]*Id.* at 487–89.

[24]*Id.* at 486–88.

12

1  There is is no reasonable probability, therefore, that the photographs or the report would

2  have led the jury to reach a different outcome regarding any of the charges.  Petitioner has thus

3  failed to establish prejudice as required by *Strickland*.[25]

4  For these reasons, claim 4(c/d) must be denied.

5  ###     4.     Petitioner's Claim 4(e):[26]

6  Claim 4(e) alleges that petitioner's trial counsel allowed false and misleading evidence to

7  go uncorrected.  It asserts: "Trial counsel . . . failed to challenge misleading evidence that

8  photographs taken sometime prior to trial showed a [cigarette] burn on the arm of Ms. Nguyen."

9  Petitioner's further explanation of this claim in the traverse suggests that petitioner asserts both

10 that allegedly false evidence regarding the extent of Nguyen's injuries went uncorrected, and that

11 Nguyen's testimony was coerced.  The first part of the claim is duplicative of Claim 4(c/d) in that

12 it concerns rebutting evidence concerning Nguyen's injuries.  Petitioner asserts that trial counsel

13 failed to produce photographs taken three days after the incident, failed to cross-examine Bui

14 about the photographs, and failed to question Officer Quijada about the photographs.  He alleges

15 that trial counsel should have elicited this testimony and produced the photographs to counter the

16 prosecution's evidence that Nguyen had been burned by a cigarette.  This aspect of the claim fails

17 ──────────────

18 [25]The claim petitioner raises in this court was presented to the California Supreme Court,

19 which did not consider it on the merits.  A similar claim was presented to the Los Angeles
   Superior Court, which addressed it on the merits.  (Motion to Dismiss, Exh. G at G-132, Exh.

20 H at H-257.)   In the superior court, petitioner asserted that "Exhibit 'C,'" the police report that

21 described the photographs, contained exculpatory evidence.  He also contended that "defense
   strategy needed the photo spoken of in Exhibit 'C' to correct false testimony."  (Motion to

22 Dismiss, G-133–34.) Petitioner further asserted that his attorney "failed to investigate and present
   an alibi witness with regard to the photos (taken on 9/3/98 by Thuy Bui) that showed Mr. Nguyen

23 was unharmed and unmarked in relation to the allegations, and failed to cross examine Ms.
   Nguyen with regard to those specific photos."  (Motion to Dismiss, Exh. G at G-132.)  To the

24 extent it is appropriate to defer to the Superior Court's decision on similar, but not identical,

25 claims, the court concludes that the state court's decision was neither contrary to, nor an
   unreasonable application, of clearly established federal law.  See 28 U.S.C. § 2254; *Lockyer v.*

26 *Andrade*, 538 U.S. 63, 73-75 (2003); *Williams v. Taylor*, 529  U.S. 362, 412–13 (2000).

27 [26]This claim is listed as "Ground Four (4)" in the petition,  and is discussed in Section

28 IV.E of the traverse at page 14.

for the same reasons that Claim 4(c/d) fails.[27]

Petitioner also contends that Nguyen signed a declaration stating that the prosecutor threatened her with prison time if she did not change her testimony and state that petitioner burned her with a cigarette. Nguyen testified that she had been burned at trial.[28] The declaration to which petitioner refers is in the record,[29] but does not mention the cigarette burn specifically. Rather, Nguyen asserts that she was threatened with jail time if she did not change her testimony to corroborate that of other witnesses. Petitioner cites the declaration in support of his contention that he never burned Nguyen with a cigarette. He contends that Nguyen's testimony to the contrary was false, and that trial counsel's failure to produce the photographs allowed the false and misleading evidence to go uncorrected.

There is no reasonable probability that producing the photographs and arguing that they showed Nguyen's testimony was coerced would have changed the outcome of the proceedings. Although Nguyen was called as a prosecution witness, the prosecutor ultimately argued to the jury

_____

[27]A similar claim that the photograph was needed "to correct false testimony," and that trial counsel should have cross-examined Ms. Nguyen regarding the photographs was considered on the merits and rejected by the Los Angeles Superior Court. (Motion to Dismiss, Exh. G at G-132-33, Exh. H at H-257.) Petitioner asserted that "defense strategy needed the photo . . . to correct false testimony," and that his attorney "failed to investigate and present an alibi witness with regard to the photos (taken on 9/3/98 by Thuy Bui) that showed Mr. Nguyen was unharmed and unmarked in relation to the allegations, and failed to cross examine Ms. Nguyen with regard to those specific photos." In superior court, petitioner asserted that the photographs were necessary to correct the allegedly false testimony of Ken Hyunh. (Thack Kim Hyunh goes by "Ken." (See Reporter's Transcript at 181, 187.)) In his federal habeas petition, by contrast, he contends the photographs were required to correct the allegedly false testimony of Loan Ngyuen. Both witnesses, however, testified that petitioner burned Ms. Nguyen with a cigarette. (Reporter's Transcript, 135–36, 196.) Producing the photographs and questioning witnesses about them would have countered the testimony of both witnesses in precisely the same manner. ) To the extent it is appropriate to defer to the Superior Court's decision on similar, but not identical, claims, the court concludes that the state court's decision was neither contrary to, nor an unreasonable application, of clearly established federal law. See 28 U.S.C. § 2254; *Andrade*, 538 U.S. at 73-75; *Williams*, 529 U.S. at 412–13.

[28]Reporter's Transcript at 155.

[29]Motion to Dismiss, Exh. G at G-184–86.

14

1   that her testimony should be disregarded.[30]  The prosecution effectively made the same argument

2   petitioner now claims his attorney should have made.  Moreover, as noted, the cigarette burn was

3   collateral to the charges involving Ms. Nguyen on which petitioner was convicted.  Petitioner has

4   not shown prejudice under *Strickland*, and Claim 4(e) must be denied.

5               **5.    Petitioner's Claim 4(f):**[31]

6          In Claim 4(f), petitioner asserts that Ms. Nguyen was coerced by the prosecution to testify

7   falsely that petitioner beat and burned her.  Petitioner argues that trial counsel failed to object to

8   the prosecutor's misconduct in pressuring Nguyen.  For the reasons stated with respect to claims

9   4(c/d) and 4(e), petitioner cannot show prejudice under *Strickland*.  The claim was considered on

10  the merits and rejected by the Los Angeles Superior Court,[32] in a decision that was neither

11  contrary to nor an unreasonable application of, clearly established federal law.[33]  Consequently,

12  petitioner cannot be granted relief.

13              **6.    Petitioner's Claim 4(g):**[34]

14         The prosecution had the investigating officer, Officer Quijada, remain in court during the

15  testimony of other witnesses.[35]  Quijada then referred to another witness's testimony during his

16  examination.[36]  Petitioner contends his trial counsel was ineffective in failing to object to Quijada's

17  testimony.  This claim was considered on the merits and rejected by the Los Angeles Superior

18  

19         [30]Reporter's Transcript at 486 (". . .[T]he People are not requesting that you convict on
    anything testified to by Loan or Jennifer.  Jennifer is an admitted perjurer.  She is an admitted

20  liar.  We are not asking you to convict on anything she said on that count or any count").

21         [31]This is "Ground Four (5)" in the petition, found at page 7a.  It is also discussed in

22  Section IV.F of the traverse at page 15.

23         [32]Motion to Dismiss, Exh. G at G-137, Exh. H at H-257.

24         [33]28 U.S.C. § 2254; *Andrade*, 538 U.S. at 73-75; *Williams*, 529 U.S. at 412–13.

25         [34]This is "Ground Four (6)" in the petition at page 7a.  It is also discussed in part IV.G of

26  petitioner's traverse, at page 15.

27         [35]Reporter's Transcript at 257:6–13.

28         [36]*Id*. at 327.

Court.[37]

The California Penal Code allows investigating officers to remain in the courtroom during the testimony of other witnesses.[38]  As a consequence, any objection to Quijada's presence would have been futile.  Counsel is not required to advance futile positions.  See *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance").  The state court's denial of petitioner's claim regarding Quijada's presence in the courtroom was neither contrary to, nor an unreasonable application of, clearly established federal law.[39]  This aspect of Claim 4(g) is therefore denied.

Petitioner, moreover, cites no rule of evidence or other authority that prohibits an investigating officer from testifying about the testimony of another witness.  Nor does he identify the objection he contends trial counsel should have made.  When petitioner brought this claim in Los Angeles Superior Court, he argued that Quijada's testimony regarding things said by other witnesses was hearsay.[40]  Hearsay, of course, is an out-of-court statement offered for the truth of the matter asserted.[41]  Here, Officer Quijada was testifying about statements made in court. Moreover, he was not referencing the testimony for the truth of what the other witness stated, but offering an opinion based on his knowledge and experience in the event the jury found the other witness's testimony to be true.

Officer Quijada testified concerning a demonstration performed by a prior witness.  The witness, Thuy Bui, had described what she observed petitioner doing with a pistol.  Bui testified

---

[37]Motion to Dismiss, Exh. G at G-136, Exh. H at H-257.

[38]Cal. Penal Code §§ 867, 868; *People v. Duckett*, 210 Cal. App. 2d 867, 869–70 (Cal. Dist. Ct. App. 1962).

[39]28 U.S.C. § 2254; *Andrade*, 538 U.S. at 73-75; *Williams*, 529 U.S. at 412–13.

[40]Motion to Dismiss, Exh. G at G-136.

[41]Cal. Evidence Code § 1200(a).

that "he used the gun and pulled like this and I heard the clicking."[42]  When asked to repeat the motion, Bui did so, and said "he pulled the gun and pulled like this."[43]  The trial court noted that "she used one hand which would stay stationary and with her other hand she pulled from forward to back several inches."[44]  Quijada observed Bui's demonstration, and later testified that the movement was "consistent with the movement of chambering a round into a semiautomatic weapon by pulling back on the top of the slide, and ejecting a bullet into the chamber."[45]

Trial counsel's failure to object to this testimony did not prejudice petitioner.  To establish prejudice under *Strickland*, petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Quijada could have offered the opinion he did even had he been excluded from the courtroom during Bui's testimony.  The prosecutor could have described or demonstrated the hand gesture to which Bui testified, and asked for Quijada's opinion.  Or the prosecutor could have asked Quijada or another qualified witness to explain and demonstrate the process of chambering a round in a semiautomatic pistol.

Lastly, even if excluding Quijada's testimony would have caused jurors to doubt whether petitioner's movement prepared the pistol for use, this would not have necessarily affected his guilt or innocence on any charge.  Petitioner could potentially have argued that he was not guilty of assault because his pistol was unloaded.  "A long line of California decisions holds that an assault is not committed by a person's merely pointing an (unloaded) gun in a threatening manner at another person.  This is because there is no present ability to inflict violent injury with an unloaded firearm."  *People v. Rodriguez*, 20 Cal.4th 1, 11 n. 3 (1999) (citations omitted).  "California courts," however, "have often held that a defendant's statements and behavior, while making an armed threat against a victim, may warrant a jury's finding the weapon was loaded."

---

[42]Reporter's Transcript at 313.

[43]*Id.*

[44]*Id.*

[45]*Id.* at 327.

17

*Id.* at 12.  Witnesses at trial testified that petitioner pointed his pistol at them and threatened to kill them if they called the police.[46]  This testimony could have supported a finding of guilt on the assault charges even absent evidence that petitioner made movements consistent with chambering a round in his pistol.

   This claim was considered on the merits and rejected by the Los Angeles Superior Court.[47]  For all of the reasons stated, there is no reasonable probability that counsel's alleged error would have changed the result of the proceeding as respects any of the charges against petitioner.  Petitioner, therefore, has failed to show prejudice under *Strickland*.  The court therefore finds that the decision of the Los Angeles Superior Court was neither contrary to, nor an unreasonable application of, clearly established federal law.  Petitioner is thus not entitled to relief.[48]

### 7.    Petitioner's Claim 4(h):[49]

   During pretrial proceedings in Los Angeles Superior Court, the prosecutor, Linda Acaldo, presented an unsigned (but initialed) declaration to the court.[50]  The declaration concerned a conversation Acaldo had had with Mark Smith, petitioner's first attorney.[51]   During the conversation, Smith told Acaldo about statements that petitioner had made to Smith.  Specifically, Smith said that petitioner told him that because petitioner had been unsuccessful in bribing or intimidating prosecution witnesses, he had decided to have them murdered.   When Smith protested, petitioner threatened to murder Smith.[52]  The trial court relied on Acaldo's declaration

---

   [46]*Id.* at 254, 299.

   [47]Motion to Dismiss, Exh. G at G-136–37, Exh. H at H-257.

   [48]28 U.S.C. § 2254; *Andrade*, 538 U.S. at 73-75; *Williams*, 529 U.S. at 412–13.

   [49]This claim is "Ground Four (7)" in the petition, found at page 7a.  It is also discussed in Section IV.H of the traverse, at page 16.

   [50]Motion to Dismiss, Exh. M at M-633–35.

   [51]*Id.*, Exh. M at M-633–35.

   [52]*Id.*

as a basis for permitting Smith to withdraw as petitioner's counsel.[53]  Acaldo also proffered the declaration in support of her request that restrictions be placed on petitioner while he was incarcerated at county jail.[54]   During a pretrial hearing, and at petitioner's trial, Smith testified against petitioner concerning the statements that were described in Acaldo's declaration.[55]

Petitioner alleges that Acaldo's declaration caused the court to deny petitioner visitors other than his attorney and investigators.[56]  It also allegedly caused the court to require that a custodial officer be present during telephone calls made by petitioner, and that all telephone conversations save for those between petitioner and his attorney be recorded.[57]  Finally, petitioner asserts that the declaration was the basis upon which the court permitted Smith to testify against him.[58]

Petitioner claims that his trial counsel, Mark Bledstein, was ineffective because he failed to object to the unsigned declaration and to Smith's testimony.  This claim was raised in the Los Angeles Superior Court, and rejected on the merits.[59]  In the superior court, petitioner attacked the declaration as showing "no evidence or mark that it has ever been filed with the Court."[60]  He also asserted that Bledstein failed to object to Acaldo's declaration as "metaphysical in that the prosecution[']s assumption that Ms. Nguyen's alleged recantation is evidence of an alleged threat to or by Ms. Nguyen [ ]as an alleged 'conduit' for additional alleged threats, either made by, or

_____

[53]Reporter's Transcript at A-1–2.

[54]*Id.* at 8.

[55]*Id.* at 340–358.

[56]*Id.* at A-6:17–21; Motion to Dismiss, Exh. M at M-636–37.

[57]*Id.*

[58]"The unsigned declaration was later used to justify calling former defense counsel Mark Smith to testify against petitioner, to show a consciousness of guilt."  (Traverse at 16 (citing Reporter's Transcript at 54–83, 97–101).)

[59]Motion to Dismiss, Exh. G at G-138 ,G-140, H-257.

[60]*Id.*, Exh. G at G-138.

for the defendant."[61]   Petitioner apparently contended that Acaldo's declaration was used in conjunction with Nguyen's altered testimony to support the prosecution's argument that petitioner was a danger to witnesses, and might use Nguyen as a messenger to communicate threats to others.

As respects Bledstein's failure to object to Smith's testimony, petitioner argued that "[t]he Trial Court violated due process, fundamental fairness and attorney-client privilege in that the Court placed defense counsel Mark Smith on the stand."[62]   He complained that "Bledstein failed to prevent Smith from testifying," and that he was prejudiced by Smith's testimony and "Bledstein's failure to effectively argue to prevent Smith's testimony from becoming part of the record."[63]   Petitioner made further arguments regarding Bledstein's failure to object to Smith's testimony and Acaldo's declaration in another portion of his superior court petition.[64]

Contrary to petitioner's assertions, Bledstein raised multiple objections to Smith's testimony, all of which were overruled.  Bledstein first moved to exclude Smith's testimony on attorney-client privilege grounds.[65]   When the court held that the testimony was admissible under California Evidence Code § 956.5, Bledstein asserted a lack of foundation objection, which was also overruled.[66]   Bledstein did not explicitly object that the testimony was more prejudicial than probative under California Evidence Code § 352.[67]   However, he stated that "[i]t [was] almost starting to border on a [§] 352 [violation]," and the court later indicated that it had understood

---

[61]*Id.*, Exh. G at G-138.

[62]*Id.*

[63]*Id.*

[64]*Id.*, Exh. G at G-140–41.

[65]*Id.*, Exh. D at D-48; Reporter's Transcript at 54.

[66]Motion to Dismiss, Exh. D at D-48; Reporter's Transcript at 98.

[67]Motion to Dismiss, Exh. D at D-48.

Bledstein was making a § 352 objection, and that it had overruled it.[68]  Bledstein's repeated objections on petitioner's behalf demonstrate that he did not make errors so serious that he was not functioning as petitioner's counsel.[69]  Accordingly, the deficient performance prong of the *Strickland* test is not satisfied.  Moreover, the California Court of Appeal ruled that Smith's testimony did not violate the attorney-client privilege.[70]  Consequently, petitioner cannot show prejudice either.  As a consequence, the superior court's rejection of petitioner's claim regarding Smith's testimony was neither contrary to, nor an unreasonable application of, clearly established federal law.[71]

As respects the court's consideration of Acaldo's unsigned declaration, petitioner asserts that the declaration was the reason Smith testified against him, and that it was also the basis on which restrictions were placed on his visitation and telephone privileges.  The restrictions did not prevent petitioner from communicating in confidence with his attorney and investigators, as his conversations with his attorney were not monitored.[72]  The restrictions therefore did not prejudice petitioner's defense.  Nor, given the threats of which the trial court had been advised, did the restrictions unnecessarily infringe on petitioner's right to visitation or communication, a right grounded in the First Amendment's guarantee of freedom of association.  See *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977) (prisoners' First Amendment associational rights must at times "give way to the reasonable considerations of penal management"); *id.* at 129 ("In a prison context, an inmate does not retain those First Amendment rights that are 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system").

---

[68]*Id.*, Exh. D at D-51.

[69]*Strickland*, 466 U.S. at 687.

[70]Motion to Dismiss, Exh. D at D-47–50.

[71]28 U.S.C. § 2254; *Andrade*, 538 U.S. at 73-75; *Williams*, 529 U.S. at 412–13.

[72]Motion to Dismiss, Exh. M at M-636–37.

Petitioner's contention that Bledstein failed to object to Alcaldo's declaration is puzzling, as the declaration was first proffered to the court in connection with Smith's motion to withdrawn as petitioner's counsel, at a time when Bledstein had not been appointed to represent petitioner in the case.  If petitioner means instead to argue that the court should not have considered the declaration because it was unsigned, then assuming without deciding that this is so, defendant cannot show prejudice.  Either Acaldo or Smith could have been placed under oath at the hearing and provided the information that was in the declaration that caused the court to permit Smith to withdraw and to place restrictions on petitioner's communications with persons outside his defense team.  Smith, in fact, effectively adopted the information in the declaration when he responded affirmatively when the trial court asked if, based on the information contained in the declaration, he believed that he had a conflict of interest that required him to withdraw.[73]   Additionally, he testified to his conversation with petitioner in a manner that was consistent with Alcaldo's declaration at a Rule 402 hearing on Bledstein's motion to exclude Smith's testimony at trial.[74]  At the same hearing, Acaldo discussed the fact that she had altered the word "whack," which Smith reported petitioner had used, to "murder" in the declaration.[75]   Consequently, the trial court's consideration of the declaration did not prejudice petitioner, and the superior court's rejection of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  As a result, relief cannot be granted on this claim.[76]

Claim 4(h) also alleges that Bledstein provided ineffective assistance because he failed to call Acaldo to testify regarding Smith's statements to her.  This claim was presented to the California Supreme Court, which did not address it on the merits.[77]  The claim does not appear

---

[73]Reporter's Transcript at A-1.

[74]See *id.* at 57–76, 340–58; Motion to Dismiss, Exh. M at M-633–35.

[75]Reporter's Transcript at 79.

[76]28 U.S.C. § 2254; *Andrade*, 538 U.S. at 73-75; *Williams*, 529 U.S. at 412–13.

[77]Motion to Dismiss, Exh. M at M-609, Exh. N at N-682.

to have been presented to the Los Angeles Superior Court. Accordingly, the court reviews this claim *de novo*. Petitioner contends that because Smith testified to additional facts he did not reveal to Acaldo, Acaldo should have been called to discredit his testimony. Other than Smith's testimony, the only record of what Smith told Acaldo about petitioner's threatening statements was Acaldo's declaration.[78] The declaration is short, but the limited information contained therein corroborates Smith's testimony.[79] Although Smith testified petitioner used the word "whack," while the declaration references "murder,"[80] Acaldo told the trial court that Smith used "whack" when speaking with her, and she changed the reference to "murder" when she wrote the declaration.[81] Thus, Acaldo's account of the conversation was consistent with Smith's testimony.

Petitioner does not explain how Acaldo would have discredited Smith had she been called as a witness. A claim of ineffective assistance must be supported by particularized facts demonstrating an entitlement to relief. Speculative claims do not warrant relief. *James*, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"); *United States v. Schaflander*, 743 F.2d 714, 721 (9th Cir. 1984) (a petitioner must substantiate an ineffective assistance of counsel claim with an adequate factual showing). Because petitioner has not alleged specific facts from which the court can infer that Acaldo's testimony would have discredited Smith, this aspect of Claim 4(h) must be denied.

Furthermore, trial counsel considered calling Acaldo as a witness.[82] Bledstein told the court that he would "do it if [he] ha[d] to do it."[83] Federal habeas courts "will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight." *Campbell v.*

---

[78]See Reporter's Transcript at 54:25–28; *id.* at 100:3–4.

[79]See *id.* at 57–76, 340–358; Motion to Dismiss, M–633–635.

[80]Reporter's Transcript at 59–60.

[81]*Id.* at 78–79.

[82]*Id.* at 79.

[83]*Id.*

23

1    *Wood*, 18 F.3d 662, 673 (9th Cir. 1994).  There is a strong presumption that counsel's conduct

2    fell within the wide range of reasonable professional assistance, or what "might be considered

3    sound trial strategy." *Strickland*, 466 U.S. at 689.  The court declines to second guess Bledstein's

4    considered, strategic decision not to call Acaldo.  Petitioner is not entitled to relief on Claim 4(h).

5                      **8.    Petitioner's Claim 4(i):**[84]

6           Petitioner next asserts that trial counsel was ineffective because he did not assert a Sixth

7    Amendment objection to the restrictions placed on petitioner's visitation and telephone privileges.

8    Petitioner alleges that the restrictions chilled his attempts to discuss the case over the telephone,

9    and denied him the ability to assist counsel in locating witnesses and building a defense.  As

10   noted, petitioner was not restricted from speaking or visiting with his attorney and investigators,

11   and his calls to his lawyer were not monitored.[85]  Certain interests, e.g., protecting the safety of

12   witnesses, warrant placing limitations on a defendant's general Sixth Amendment right to consult

13   with his attorney and participate in his own defense in any manner he chooses.  See, e.g., *United*

14   *States v. Moussaoui*, 591 F.3d 263, 289 (4th Cir. 2010) ("[T]he restrictions on counsel's ability

15   to communicate with Moussaoui regarding pretrial discovery matters were not so onerous as to

16   render counsel effectively absent during the guilty plea proceeding.  The right to communicate

17   with counsel at any point in the proceedings is not absolute.  '[I]n certain contexts there can be

18   an important need to protect a countervailing interest, which may justify a restriction on

19   defendant's ability to consult with his attorney if the restriction is carefully tailored and limited,'"

20   quoting *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 127 (2d Cir.

21   2008)); *United States v. Hung*, 667 F.2d 1105, 1107-08 (4th Cir. 1981) (per curiam) (holding that

22   a protective order prohibiting defense counsel from disclosing the contents of certain documents

23   to defendant did not violate defendant's Fifth or Sixth Amendment rights where the trial court

24   allowed defense counsel to review Jencks Act material to assist in determining whether material

25

26           [84]This is "Ground Four (8)" in the petition, found at page 7a.  It is discussed in Section

27   IV.I of the traverse, at page 16.

28           [85]Motion to Dismiss, Exh. M at M-636–37.

1   should be disclosed, but precluded counsel from consulting with defendant about the material);

2   *United States v. Bell*, 464 F.2d 667, 671-72 (2d Cir. 1972) (counsel barred from disclosing a

3   sensitive airport hijacker profiling system); see also *Morgan v. Bennett*, 204 F.3d 360, 368 (2d

4   Cir.2000) (barring counsel from disclosing the identity of a cooperating witness to the defendant,

5   where defendant and his associates outside prison had engaged in threats and other witness

6   intimidation tactics).   The restrictions thus did not interfere with petitioner's Sixth Amendment

7   rights and petitioner cannot show prejudice under *Strickland*.

8              **9.      Petitioner's Claim 4(j):**[86]

9              Petitioner claims that trial counsel was ineffective because he did not move to dismiss the

10   charges against petitioner, and did not move to suppress incriminating statements obtained by

11   trickery.   At issue are voluntary statements petitioner made to police, which provided probable

12   cause to arrest petitioner, and which were used to impeach him when he testified at trial.

13   Petitioner alleges the statements were obtained in violation of *Miranda v. Arizona*, 348 U.S. 436

14   (1966).

15              It is well settled that even if deliberately obtained in violation of *Miranda*, a statement may

16   be used to impeach a defendant who testifies inconsistently at trial.   *Harris v. New York*, 401 U.S.

17   222, 223–26 (1971); *United States v. Tsinnijinnie*, 91 F.3d 1285, 1288 (9th Cir. 1996) ("The

18   Supreme Court has repeatedly allowed the use of statements that violate *Miranda* to impeach the

19   credibility of the defendant who takes the stand and whose testimony is contrary to those

20   statements").   In his petition to the California Supreme Court, petitioner acknowledged this.[87]   He

21   argued, however, that the statements should be treated as involuntary, because they were obtained

22   by officers who deliberately evaded *Miranda*.   For this reason, he asserted, they should not have

23

24

25   ───────────────

26   [86]This is "Ground Four (9)" in the petition, found at page 7a.   It is discussed in Section
     IV.J of the traverse, at page 17.

27   [87]Motion to Dismiss, Exh. M at M-604 (citing *People v. Peevy,* 17 Cal. 4th 1184, 1194–98

28   (1998)).

used for any purpose.[88]  Petitioner is correct that an involuntary statement must be excluded for all purposes.[89]

"[A] confession is involuntary only if the police use coercive means to undermine the suspect's ability to exercise his free will.  In determining whether a statement is voluntary, the court looks at the surrounding circumstances and the combined effect of the entire course of the officer's conduct upon the defendant."  *Pollard*, 290 F.3d at 1033 (citations omitted).  "Courts that address this issue look at factors such as the declarant's state of mind, the physical environment in which the statement was given, and the manner in which the declarant was questioned."  *Id.*

Petitioner's traverse, and his habeas petition to the California Supreme Court, cite the police report as evidence of what transpired before petitioner gave the statements at issue.[90]  Because petitioner does not appear to dispute the report's factual recitation, the court relies on it in assessing his claim.  The report states that the police impounded petitioner's car, which at the time was being driven by petitioner's friend.[91]  Officer Jamgotchian called petitioner and told him the car would be released if petitioner came to the station to get it.[92]  Petitioner came to the station, and Jamgotchian released the vehicle to him.[93]  Jamgotchian told petitioner he was not under arrest and was free to leave the station.  Petitioner acknowledged that he was not under arrest, but said he wanted to discuss the case.[94]  Jamgotchian summarized several victims'

---

[88]*Id.* (citing *People v. Bey*, 21 Cal.App.4th 1623, 1627 (1993)).

[89]*Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002) (citing *Michigan v. Harvey*, 494 U.S. 344, 351 (1990) and *Henry v. Kernan*, 197 F.3d 1021, 1029 (9th Cir. 1999)).

[90]Traverse at 18; Motion to Dismiss, Exh. M at M-602–03.

[91]Motion to Dismiss, Exh. M at M-644.

[92]*Id.*

[93]*Id.*

[94]*Id.*

1   statements and asked petitioner if he knew what had prompted them; this led petitioner to make

2   the statements at issue.  Jamgotchian stated that the meeting with petitioner took place in a large

3   office[95] and lasted approximately fifteen to twenty minutes.[96]  Petitioner and Jamgotchian were

4   alone, with the exception of approximately five minutes, when Officer Valdez was present.[97]

5           These facts in no way suggest that petitioner's statements were coerced.  Petitioner came

6   to the police station voluntarily, and was told that he was not under arrest and that he was free to

7   leave.  Petitioner opted to stay, and made the statements after just a few minutes with a single

8   officer in a large room.  Therefore, the state court's decision to deny this claim was neither

9   contrary to, nor an unreasonable application of, clearly established federal law,[98] and petitioner

10  cannot be granted relief on this aspect of his claim.

11          Petitioner was arrested immediately after his fifteen to twenty minute discussion with

12  Jamgotchian.[99]   Petitioner concludes that, because he was told he was not under arrest prior to

13  speaking with Jamgotchian, the statements must have provided the justification for his arrest.

14  Petitioner asserts that Jamgotchian's failure to give him *Miranda* warnings before he made the

15  statements shows that his arrest was based on illegally obtained statements.  He contends his

16  attorney should have moved to dismiss the charges against him on this basis and that he was

17  ineffective because he failed to do so.

18          *Miranda* protections are not triggered until an individual is subjected to an "interrogation"

19  while "in custody."[100]  The Supreme Court has held that

20  _____

21  [95]Reporter's Transcript at 440.

22  [96]*Id.*

23  [97]*Id.* at 438.

24  [98]28 U.S.C. § 2254; *Andrade*, 538 U.S. at 73-75; *Williams*, 529 U.S. at 412–13.

25  [99]Motion to Dismiss, Exh. M at M-645.

26

27  [100]*United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002) ("An officer's obligation to give
    a suspect *Miranda* warnings before interrogation extends only to those instances where the
28  individual is 'in custody,'" citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam);

"[t]he *Miranda* custody test is an objective test. Two discrete inquiries are essential: (1) the circumstances surrounding the interrogation, and (2) given those circumstances, whether a reasonable person would have felt free to terminate the interrogation and leave. 'Once the . . . players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Yarborough v. Alvarado*, 541 U.S. 652, 653 (2004) (quoting *Thompson v. Keohane,* 516 U.S. 99, 112 (1995)).

To determine whether a person is "in custody" for *Miranda* purposes, the "[c]ourt[ ] must examine 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'" *Id.* at 663 (quoting *Stansbury v. California*, 511 U.S. 318, 322, 325 (1994)); see *Florida v. Bostick*, 501 U.S. 429, 438 (1991) (holding that the "reasonable person" test presupposes an innocent person); *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) (stating that "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation"); *Kim*, 292 F.3d at 973-74 (The court "must determine whether 'the officers established a setting from which a reasonable person would believe that he or she was not free to leave,'" citing *United States v. Beraun-Panez*, 812 F.2d 578, 580 (9th Cir. 1987), modified, 830 F.2d 127, and *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001)); *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981) (stating that a defendant is "in custody" when the circumstances indicate that "a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave").

The Ninth Circuit has identified certain factors that are relevant in assessing whether an individual is "in custody" for *Miranda* purposes. See *Kim*, 292 F.3d at 974. These are "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with

see *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980) ("We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent").

evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Id.* (quoting *Hayden*, 260 F.3d at 1066, in turn citing *Beraun-Panez*, 812 F.2d at 580); see also *United States v. Wauneka*, 770 F.2d 1434, 1438 (9th Cir. 1985) (citing *United States v. Crisco*, 725 F.2d 1228, 1231 (9th Cir. 1984), cert. denied, 466 U.S. 977 (1984), and *Booth*, 669 F.2d at 1235). "Other factors[, however,] may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators; the *Beraun-Panez/Hayden* factors are simply ones that recur frequently." *Kim*, 292 F.3d at 974.

Because the standard is an objective one, an individual's age, experience or frailties are not relevant in assessing whether the individual is "in custody" for *Miranda* purposes. See *Berkemer*, 468 U.S. at 442 (the police do not bear the "burden of anticipating the frailties or idiosyncracies of every person whom they question" (citations omitted)); see also *Yarborough*, 541 U.S. at 666 (stating that defendant's age and experience are irrelevant to the *Miranda* custody inquiry); cf. *Mathiason*, 429 U.S., at 495-96 (noting that facts arguably relevant to whether an environment is coercive may have "nothing to do with whether respondent was in custody for purposes of the *Miranda* rule").

Likewise, the subjective, undisclosed views of the officers are generally irrelevant to the custody analysis. See *Stansbury*, 511 U.S. at 324-25; *Berkemer*, 468 U.S. at 442 (stating that an officer's subjective intention "has no bearing on the question whether a suspect is 'in custody'"). If "the officer's views or beliefs [concerning the nature of the interrogation or potential culpability of the individual being questioned] [are] somehow manifested to the individual under interrogation and would . . . affect[ ] how a reasonable person in that position would perceive his or her freedom to leave," however, they "may be one among many factors that bear upon the assessment whether that individual was in custody." *Stansbury*, 511 U.S. at 325.

Petitioner raised this claim regarding the circumstances of his arrest in his petition to the

Los Angeles Superior Court.[101]  The Superior Court rejected the claim on the merits.[102]  Applying the objective analysis mandated under *Miranda* to the facts of the present case, it was not contrary to, or an unreasonable application of, clearly established federal law for the state court to find that a suspect who arrives at a police station voluntarily, is told that he is not under arrest and is free to leave, but opts to stay and volunteers a confession within a few minutes of speaking with a single officer in a large room was not in custody for purposes of *Miranda*.[103]  Therefore, petitioner cannot prevail on this claim.

### 10.    Petitioner's Claim 4(k):[104]

Petitioner contends that his trial counsel, Mark Bledstein, was ineffective because he failed to object to the prosecutor's decision to "strik[e] all Asians from the jury panel."  Petitioner raised this claim in his petition to the Los Angeles Superior Court, and the Superior Court rejected it on the merits.[105]  In superior court, petitioner argued that "Bledstein was ineffective and thus violated defendant's right to fair trial by allowing, failing to object to, or argue, that the prosecution constructed a racially biased jury by utilizing her peremptory challenges to exclude Asian jurors."[106]  Petitioner asserted that Bledstein's deficient performance deprived him the protections afforded by *Batson v. Kentucky*, 476 U.S. 79 (1986).[107]  In the present petition, petitioner accurately asserts that under *Batson*, peremptory challenges cannot be used to strike jurors on the basis of race.  Under *Strickland*'s deficient performance prong, the court must determine whether

---

[101]Motion to Dismiss, Exh. G at G-124.

[102]*Id.*, Exh. H at H-257.

[103]28 U.S.C. § 2254; *Andrade*, 538 U.S. at 73-75; *Williams*, 529 U.S. at 412–13.

[104]This is "Ground Four (10)" in the petition, stated at page 7a.  The claim is also discussed in Section IV.K of the traverse, at page 18.

[105]Motion to Dismiss, Exh. G at G-128, Exh. H at H-257.

[106]*Id.*, Exh. G at G-128.

[107]Motion to Dismiss, Exh. G at G-128.

in light of all the circumstances, trial counsel's failure to raise a *Batson* challenge was outside the wide range of professionally competent assistance.[108]  This requires that the court consider, to some degree, the merits of a hypothetical *Batson* challenge, had counsel made one.[109]  *Batson* claims are analyzed using a three-step test:

> "First, the movant must make a prima facie showing that the prosecution has engaged in the discriminatory use of a peremptory challenge by demonstrating that the circumstances raise 'an inference that the prosecutor used [the challenge] to exclude veniremen from the petit jury on account of their race.'  Second, if the trial court determines a prima facie case has been established, the burden shifts to the prosecution to articulate a neutral explanation for challenging the juror in question.  Third, if the prosecution provides such an explanation, the trial court must then rule whether the movant has carried his or her burden of proving the existence of purposeful discrimination."  *Tolbert v. Gomez*, 190 F.3d 985, 987-88 (9th Cir.1999) (en banc) (citations omitted).

Petitioner has not adduced sufficient evidence to permit the court to analyze the merits of a hypothetical *Batson* challenge.  *Batson* requires an inquiry concerning "'the totality of the relevant facts' about a prosecutor's conduct."[110]  A proper *Batson* inquiry considers, *inter alia*, a comparative juror analysis. "Comparative juror analysis involves comparing the characteristics of a struck juror with the characteristics of other potential jurors, particularly those jurors whom the prosecutor did not strike."  *United States v. Collins*, 551 F.3d 914, 921 (9th Cir. 2009) (citations omitted).  "[C]omparative juror analysis is an important tool that courts *should* use on appeal" as it assists the court in determining whether the totality of circumstances gives rise to an

---

[108]*Strickland*, 466 U.S. at 690.

[109]See *Dang v. Kernan*, No. 2:05-cv-02157, 2008 WL 4133859 (E.D. Cal. Sept. 4, 2008) ("To determine whether petitioner's appellate counsel's performance fell below an objective standard of reasonableness, this Court first addressed whether the alleged *Batson* violation occurred.")

[110]*Miller-El v. Dretke*, 545 U.S. 231, 239 (2005) (quoting *Batson*, 476 U.S. at 94).

inference of discrimination.  *Boyd v. Newland,* 467 F.3d 1139, 1149 (9th Cir. 2006).

The record does not include transcripts of jury selection, or any other records as to what transpired during jury selection.  Thus, the court has no way to conduct a comparative juror analysis, or otherwise consider whether there were non-discriminatory reasons for excluding Asian jurors.  The only evidence before the court concerning jury selection is petitioner's assertion that all three Asian jurors were struck from the jury panel,[111] and his comment in a state court motion that the jury was "almost all white."[112]  Petitioner must adduce more evidence to make a prima facie showing of discrimination.  The mere use of a peremptory challenge to strike a juror of a particular race is not per se unconstitutional.[113]  Petitioner's statement that the jury was "almost all white," moreover, implies that there were non-white jurors.  The fact that jurors of color were seated weighs against an inference of discrimination.[114]  As petitioner has adduced no additional information, there is an insufficient basis upon which to conclude that trial counsel's failure to raise a *Batson* challenge was outside the wide range of professionally competent assistance.  As a result, the court cannot find that the Los Angeles Superior Court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law.  This claim therefore fails.[115]

## 11.  Petitioner's Claim 4(l):[116]

Petitioner next asserts that, prior to the time he was allowed to withdraw, trial counsel Smith was ineffective because he failed to file a pretrial motion to dismiss all counts of assault with a firearm.  Petitioner raised this claim in his petition to the Los Angeles Superior Court,

---

[111]Petitioner's Traverse at 18.

[112]Clerk's Transcript at 335.

[113]See *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994).

[114]See *United States v. Chinchilla*, 874 F.2d 695, 698 n.4 (9th Cir. 1989).

[115]28 U.S.C. § 2254; *Andrade*, 538 U.S. at 73-75; *Williams*, 529 U.S. at 412–13.

[116]This is "Ground Four (11)" in the petition, at 7a.  This claim is discussed in part IV.L of the traverse, at 19.

which rejected it on the merits.[117]   Several witnesses at the preliminary hearing testified that petitioner moved his pistol in a sweeping motion, in their direction, while threatening to kill them if they called the police.[118]   Robert Huynh testified that petitioner pointed the gun toward him, Cindy, Vuong, Phoung, Judy, both of his cousins, and his friends.[119]   Thach Huynh testified that "he [did] not aim at anybody in particular, but he just waived the gun like that."[120]   Petitioner argues that this evidence was insufficient to support charges of assault with a firearm, because he made one motion generally threatening the group, rather than making individual threatening gestures toward each victim.   He asserts that the crime of assault with a firearm requires that a defendant have pointed his weapon toward at least one of the victims.   Based on this understanding of the law, petitioner contends that his attorney should have filed a pretrial motion to dismiss the assault charges.

In *People v. Raviart*, 93 Cal.App.4th 258, 263 (2001), the California Court of Appeal explained that one can commit assault with a deadly weapon without actually pointing one's firearm at the victim.[121]   See also *People v. Robles*, Nos. D051344, D051421, 2008 WL 4963291, *12 (Nov. 21, 2008) (Unpub. Disp.) ("Because the gravamen of the crime of assault with a firearm is the defendant's act and not his intent in committing that act, a defendant need not even point a weapon at the victim to constitute an assault, but only needs to hold the weapon in such a way as to effectively use it").   The *Raviart* court cited three examples, one of which is particularly relevant here.   In *People v. Thompson*, 93 Cal.App.2d 780 (1949), defendant pointed a revolver toward two sheriff's deputies, aiming between them and pointing the gun downward. The court held that defendant's action constituted assault with a deadly weapon, noting that

---

[117]Motion to Dismiss, G-126–127, H-257.

[118]See, e.g., Clerk's Transcript at 47–48 (testimony of Thach Huynh); Clerk's Transcript at 77–78 (testimony of Vuong Huynh); Clerk's Transcript at 89–90 (testimony of Robert Huyhn).

[119]Clerk's Transcript at 89–90.

[120]Clerk's Transcript at 48.

[121]*People v. Raviart*, 93 Cal.App.4th 258, 263 (2001).

"[w]hile [the defendant] did not point the gun directly at [the deputies] or either of them, it was in a position to be used instantly."[122]   Like Thompson, petitioner held his firearm in a position to be used instantly.   Indeed, he went further, actually pointing the pistol in the direction of his victims with a sweeping motion.   Any motion to dismiss the charges of assault with a firearm on the basis articulated by petitioner would have been futile.   Therefore, petitioner suffered no prejudice, and the superior court's rejection of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law.[123]

### 12.   Petitioner's Claim 4(m):

Citing his allegations of ineffective assistance of counsel, petitioner contends that the totality of circumstances deprived him of a fair trial.   This is a cumulative error claim that was presented to the California Supreme Court and rejected as procedurally defaulted.   A form of the claim was presented to the Los Angeles Superior Court, and rejected on the merits.[124]   Because petitioner's claim in superior court and his claim here are vague, and to some extent supported by different factual arguments, the court cannot conclude to a certainty that the Los Angeles Superior Court considered and rejected a cumulative error claim identical to the one presented now.   In an abundance of caution, therefore, the court will conduct *de novo* review of the claim, rather than assess whether the superior court's decision was contrary to, or an unreasonable application of, clearly established federal law.

On *de novo* review, petitioner's cumulative error claim fails, as the court has found that none of the deficiencies alleged – assuming any constituted a deficiency – prejudiced defendant. Even were this not the case, a comparison to other cases involving claims of cumulative error shows that the errors alleged here do not warrant reversal because the government's case was not weak, and the errors were not significant.

"Cumulative error applies where, 'although no single trial error examined in isolation is

---

[122]*People v. Thompson*, 93 Cal.App.2d 780, 782 (1949).

[123]28 U.S.C. § 2254; *Andrade*, 538 U.S. at 73-75; *Williams*, 529 U.S. at 412–13.

[124]Motion to Dismiss, Exh. G at G-141, Exh. H at H-257.

sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors [has] still prejudice[d] a defendant.'" *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000) (citing *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) (alterations original)). "In those cases where the government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors." *Frederick*, 78 F.3d at 1381.

The government's case in *Frederick* was weak because there was only one direct witness, whose testimony was at times inconsistent.[125] Here, the government's evidence was strong. Multiple, credible witnesses testified to having seen petitioner commit the alleged acts. The witnesses had a good opportunity to observe and remember the events at issue because all were victims. Their testimony, moreover, was consistent.[126] After petitioner testified, he was impeached with prior inconsistent statements.

The errors alleged here, moreover, are not as serious as those in *Brown v. Uttecht*, 530 F.3d 1031 (9th Cir. 2008), where due to multiple alleged errors, defendant's strongest mitigation argument against the death penalty was not presented to the jury.[127] Even in that case, the court deemed the alleged errors "reasonable strategic decisions."[128] Similarly, the errors identified by petitioner do not begin to approach in severity those considered by the court in *Harris v. Wood*, 64 F.3d 1432, 1438–39 (9th Cir. 1995) (finding cumulative prejudice where counsel's performance was seriously deficient in eleven ways). Far from a "pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture," *Strickland*, 466

---

[125]*Frederick,* 78 F.3d at 1381.

[126]Petitioner asserts in his traverse that Thuy Bui, Thack Huynh, Robert Huynh and Cindy Huynh testified that petitioner and Loan Nguyen brought their argument to the Huynh residence, where petitioner pulled Nguyen's hair, burned her with a cigarette, beat her in the face and head with a handgun, and threatened to kill the entire Huynh family if they called the police. Although petitioner mischaracterizes whether and where the witnesses saw petitioner beat Nguyen, he concedes that they testified consistently about the key events.

[127]*Brown v. Uttecht*, 530 F.3d 1031, 1049 (9th Cir. 2008) (Reinhardt, J., dissenting).

[128]*Brown v. Uttecht*, 530 F.3d 1031, 1037 (9th Cir. 2008).

U.S. at 695, the alleged errors here had, at most, an "isolated, trivial effect," *id.*

As noted, petitioner raised a cumulative error claim in his petition to the Los Angeles Superior Court.[129]   The errors alleged in that petition were failure to move to dismiss all charges, presented in this court as Claim 4(j); failure to seek dismissal of the assault charges, presented here as Claim 4(*l*); failure to raise a *Batson* challenge, presented as federal Claim 4(k); failure to request appropriate jury instructions, not raised in petitioner's federal habeas action; failure to investigate and call certain witnesses, presented in this action as Claim 4(a/b) and 4(c/d); failure to correct false or misleading testimony, partially presented here as Claim 4(e); failure to object to Officer Quijada's testimony, raised as Claim 4(g); failure to object to the prosecution's coercion and harassment of Loan Nguyen, presented here as Claim 4(f); failure to object to Smith's testimony and Acaldo's declaration, and failure to call Acaldo as a witness, raised in federal Claim 4(h); and failure adequately to argue the admissibility of Smith's testimony, not raised in the federal habeas petition.[130]

The state court denied petitioner's cumulative error claim on the merits.[131]   For the reasons stated above, to the extent the cumulative error alleged in the Superior Court petition overlaps with the cumulative error alleged here, the state court's denial of that claim was neither contrary to, nor an unreasonable application of, clearly established federal law.[132]   The only ineffective assistance claim that petitioner advances here that was not presented in the Superior Court petition is Claim 4(i) – failure to make a Sixth Amendment objection to the limitations placed on petitioner's telephone and visitation privileges.  As discussed, this claim lacks merit.  Therefore, petitioner's "totality of the circumstances" claim is denied.

---

[129]Motion to Dismiss, Exh. G at G-141.

[130]*Id.*, Exh. G at G-124–142.

[131]*Id.*, Exh. H at H-257.

[132]28 U.S.C. § 2254; *Andrade*, 538 U.S. at 73-75; *Williams*, 529 U.S. at 412–13.

1        **C.**     **Ineffective Assistance of Appellate Counsel**[133]

2          **1.**      **Petitioner's Claim 5(b)(1):**[134]

3        Petitioner contends his appellate counsel, Robert Horner, was ineffective because he failed

4   to argue that the attorney who filed the motion for new trial, Duane Folke, was ineffective for

5   failing to identify the ineffectiveness of trial counsel as a basis for the motion.  This claim does

6   not appear to have been raised in petitioner's Los Angeles Superior Court or California Court of

7   Appeal petitions.  It was first raised in the petition to the California Supreme Court.[135]  The

8   California Supreme Court did not address the claim on the merits.[136]  Accordingly, the court

9   reviews the claim *de novo*.

10        The standard for determining ineffectiveness of trial counsel applies equally in evaluating

11   alleged ineffectiveness by appellate counsel.  *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir.

12   1992).  A petitioner "must show that counsel's advice fell below an objective standard of

13   reasonableness, . . . and that there is a reasonable probability that, but for counsel's

14   unprofessional errors, [he] would have prevailed on appeal."  *Miller v. Keeney*, 882 F.2d 1428,

15   1434 (9th Cir. 1989).

16        As noted in connection with the discussion of Claim 4(c), the trial court had discretion to

17   consider petitioner's ineffective assistance of counsel claim at the motion for new trial stage.  See

18   *Cornwell*, 37 Cal.4th at 99-101.  Also as noted, it is unclear whether the trial court would have

19   concluded that it was most expeditious to decide petitioner's ineffective assistance of trial counsel

20   _____

21       [133]In his petition, petitioner claimed that appellate counsel was ineffective for failing to
22   raise all of the claims presented in the petition.  Petitioner voluntarily dismissed this claim in
    response to respondent's earlier motion to dismiss.  Consequently, the claim is no longer before
23   the court.  Similarly, petitioner conceded that Claim 5(a) had not been exhausted.  Judge Johnson
    dismissed that claim in a minute order filed May 20, 2005.

24
25       [134]Traverse at 22–23.  Ground Five states, *inter alia*, that "petitioner specifically requested
    that appeal counsel raise the claim . . . that counsel was ineffective for failing to include an
26   ineffective trial counsel claim in the motion for new trial."  (Petition at 7a.)

27       [135]Motion to Dismiss, Exh. M at M-620, ¶¶ 33–34.

28       [136]Motion to Dismiss, Exh. M at M-609, Exh. N at N-682.

claim in the context of the new trial motion, given that the claim concerned allegedly deficient performance that took place outside the courtroom and the court thus could not rely on what it had observed during the course of trial.  To establish prejudice, petitioner must show a reasonable probability that had his appellate counsel made the argument, (1) the case would have been remanded to the trial court, (2) the trial court would have exercised its discretion to consider the ineffective assistance of trial counsel claim, (3) the trial court would have concluded that petitioner's trial counsel was ineffective, (4) petitioner would have been granted a new trial, and (5) the outcome of the new trial would have been different.  See *Strickland*, 466 U.S. at 694 (requiring that a party claiming ineffective assistance show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").  See also *Yarborough*, 540 U.S. at 6 (stating that judicial review of an attorney's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Given the discretion with which the trial court was vested, there is no reasonable probability that the appellate court would have remanded the case to the trial court and directed that it consider whether ineffective assistance of trial counsel warranted a new trial.  Moreover, for the reasons discussed at length in this order, there is no reasonable probability that a new trial, had one been granted, would have resulted in a not guilty verdict.  Petitioner was thus not prejudiced by appellate counsel's failure to raise this argument, and he is not entitled to relief on Claim 5(b)(1).

## 2.    Petitioner's Claim 5(b)(2):[137]

Claim 5(b)(2) asserts that petitioner's appellate counsel provided ineffective assistance because he failed to argue that trial counsel, Mark Bledstein, was ineffective in failing to produce certain witnesses.  The petition filed in Los Angeles Superior Court asserted that appellate counsel was ineffective because he failed to argue that trial counsel was ineffective.[138]  The superior court denied this claim on the merits.[139]  The Superior Court petition did not specifically contend that

---

[137]Traverse at 23–24.

[138]Motion to Dismiss, Exh G. at G-151.

[139]*Id.*, Exh. H at H-257.

1  appellate counsel should have argued that Bledstein failed to produce witnesses.[140]

2      In his petition to the California Court of Appeal, petitioner argued that appellate counsel

3  was ineffective, discussed why certain witnesses should have been presented at trial, and

4  concluded that:

5      "[t]he judgment of conviction is invalid and must be vacated because appeal counsel

6      failed to protect petitioner's rights to an meritable appeal, by raising the trial

7      court's error in believing it could not resolve an ineffective trial counsel claim in

8      a motion for new trial; and for trial counsel rendering ineffective prejudicial

9      assistance which failed to put all relevant evidence before the jury for them to make

10      an adequate decision."[141]

11  Although petitioner did not explicitly state the contention he does now – that appellate counsel

12  should have argued Bledstein was ineffective because he failed to produce certain witnesses – such

13  a claim was fairly encompassed within the arguments raised in the Court of Appeal.  The Court

14  of Appeal dismissed the claim for failure to make a *prima facie* showing of entitlement to relief.[142]

15      Claim 4(c) advances a similar argument with respect to the ineffectiveness of the attorney

16  who filed a motion for new trial on petitioner's behalf.  For the reasons discussed regarding Claim

17  4(c), petitioner was not prejudiced under *Strickland*, and cannot prevail.  Accordingly, the

18  decisions of the Los Angeles Superior Court and the California Court of Appeal rejecting this

19  claim were not contrary to, or an unreasonable application of, clearly established federal law.[143]

20  Similarly, to the extent that the vagueness of petitioner's allegations in his state petitions requires

21  *de novo* review, the court rejects petitioner's claim because he cannot show prejudice under

22  *Strickland*.

23  _____

24      [140]*Id.*, Exh. G G-151–53.

25      [141]*Id.*, Exh. I at I-268–72.

26      [142]*Id.*, Exh. J at J-550.

27      [143]28 U.S.C. § 2254; *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams v. Taylor*, 529

28  U.S. 362, 412–13 (2000).

**CONCLUSION**

For the reasons stated in Judge Johnson's Report and Recommendation, and for the further reasons stated herein, IT IS ORDERED that judgment be entered consistent with this order and that the Petition for Writ of Habeas Corpus be denied.  IT IS FURTHER ORDERED that the clerk serve copies of this Order, the Magistrate Judge's Report and Recommendation, and the Judgment on petitioner by United States mail.


DATED: March 31, 2010

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

40